And before we begin, lest I forget, the court thanks Covington and Burling for undertaking this representation. Thank you, Your Honor. May it please the Court, my name is Uma Everett, and I represent Petitioner Federico Tavares I would like to reserve three minutes of my time for rebuttal. Yes, granted. The Board of Immigration Appeals removal order should be terminated because Federico Tavares is a U.S. citizen. He derived his citizenship upon his mother's naturalization in 1990. Judge Garth, can you hear? I can hear. The relevant Immigration and Nationality Act provisions allowed Mr. Tavares to obtain his citizenship through his mother's naturalization because he was born out of wedlock. Under the statute, the only way Mr. Tavares could not have obtained his U.S. citizenship is if his paternity had not been established by legitimation prior to his mother's naturalization. Under either Massachusetts or Cape Verde law, Mr. Tavares' paternity was never established by legitimation. His father, Manuel Tavares, even submitted an affidavit stating that he took no steps to legitimate his son, Federico. But that affidavit was submitted after the naturalization of his mother, which was in 1990. Can we consider that affidavit? Yes, we can consider that affidavit as a piece of evidence that he was not naturalized. What you cannot do is consider the affidavit an act of legitimation because it occurred after the naturalization. Now, your brief takes the- Because of what? I didn't hear that. Because of what? The affidavit was submitted in 2000, and the naturalization occurred in 1990. Therefore, it cannot be an act of legitimation. It itself is not an act of legitimation or acknowledgment. You take the position in your brief that Cape Verde law should apply, but you just indicated under the law of either jurisdiction. What is your position as to what law applies, and do we have to reach that issue? We believe that Cape Verde law applies, but we don't believe you need to reach that issue. Even if this court were to agree with the law selected by the BIA that Massachusetts law applies, and the specific provision of Massachusetts law that the BIA selected applies, Mr. Tavares' paternity was not established by legitimation.  Ms. Everett. Yes. We should adopt the BIA's analysis under the doctrine of Chevron, or whether the issue of what sovereign's law we should look at should be determined by the court. That, to me, is a very important issue. Well, under the principles of Chevron, we don't believe this court needs to adopt the BIA's analysis. The Ninth Circuit and the Eleventh Circuit have had cases where they say, in claims of U.S. nationality, the courts of appeal can determine these issues de novo, without deference to the BIA. In addition, Chevron is granted in cases where the BIA interprets an ambiguous statute, and that was not done here. There's no interpretation or explanation of what's established by legitimation. Shouldn't we at least give them deference as to which law applies? We think the weight of the authority goes the other way, to favoring the law of the birth country. In fact, the BIA has published decisions that state, in cases where you're looking for established by legitimation under this provision, former... Well, they have decisions where they use the law of the birth country, but some of the facts are different. That's true, Your Honor. The weight of the authority still favors looking at the law of the birth country. In this case, the BIA did not explain why it departed from those cases. It didn't explain or state that their facts were different. Nor in those cases did it ever explain why it chose the birth country. It's true, Your Honor, but we don't believe that even in this case that you need to decide whether deference applies. Because even if you decide to defer to the BIA's decision, we believe Mr. Tavares is not legitimated under the Massachusetts statute. When you say decide to defer to their decision, you're really saying defer to their view that we would apply the law of Massachusetts? Yes, defer to their choice of Massachusetts law and which specific provision. As the respondent conceded, there's no deference to the ultimate question of legitimation here. Now, the BIA said there's no dispute that the respondent's father had at all relevant times acknowledged his paternity of the respondent. Could you comment on what evidence you believe there is in the record as to acknowledgement? In that context, we believe the BIA is referring to a looser, more informal type of acknowledgement such as identity of the father. That hasn't been in dispute. What is in dispute is whether there's a more formal, rigorous acknowledgement determination which we believe needs to occur under the immigration statutes. What is there at all as to the father's deeds, words, conduct relative to the son? We believe the record is silent on any acts of acknowledgement. There's only a few pieces of evidence, and we believe they weigh towards our client's position. For example, the affidavit from the father stating that he took no steps to legitimate his son. The government relies on a birth certificate, but we don't believe that. On that affidavit, when was that affidavit executed? 2000. Okay. Should we give any more credence to that than we do to the affidavits, the other affidavits that he acknowledged that he issued in 2000, or the one other that he made in 2000, that Frederico Tavares was in fact his son? Well, he said in 2000 that he took no steps to legitimate him. We can't use his statements that Frederico Tavares is his son as an act of acknowledgement because it occurs after the naturalization. But we can use his other. Because it occurred after the legitimation. Excuse me, after the naturalization date. You said there were no steps taken, but when Tavares was born, the manual Tavares' name was listed on the birth certificate as the father. And he took no steps to repudiate that at any time. In fact, he married Tavares' mother in 1987. There was no repudiation at that time. Can't there be sort of an acknowledgement by negative implication here? No, Your Honor. We believe for acknowledgement there needs to be an affirmative act. Lack of conflict or acquiescence alone isn't enough for these purposes. There's no indication for the birth certificate that Manuel Tavares even knew his name was put on it. There's no facts in the record that support how that birth certificate came to be. And it's important we can think of in these situations where you need an affirmative act. This is a family where the child was born out of wedlock. The father was married to another woman at the time of birth, at the time of Federico's birth. Manuel Tavares lived apart from his son for over a decade. You can imagine in situations like these, the family situations are very complicated, and you need some sort of affirmative act to show that the father has acknowledged his son. Would it be different if we knew that he knew that his name was on the birth certificate? That's a closer question. We'd have to see the circumstances where he knew that his name was on the birth certificate, or he knew how it was created. I mean, that alone isn't an act. Again, that goes to lack of conflict or acquiescence, and we don't believe that's enough. Is it your burden of proof to show lack of legitimation? It is Federico Tavares' burden to show he derived derivative citizenship, and we think that was accomplished through the affidavit of the father. There's no other evidence in the record that the BIA has pointed to, or that the government has pointed to in their briefs that show, that take away from that lack of acknowledgement in the affidavit. What statute in Massachusetts did the BIA rely upon in order to say that he was legitimated? The BIA relied upon the inheritance statutes, which are at 190 section C, or excuse me, 190 section 7. We believe a more appropriate section would have been 209 C, which have been called by the BIA the paternity and parentage statutes. Indeed, the inheritance statutes actually reference 209 C, and 209 C, the purpose is to provide all rights to children born out of wedlock that those who are born in wedlock have. It provides for means for a voluntary acknowledgement, and we think that's a better standard to have used. Would it make a difference here? No, it wouldn't make a difference because under either regime, Mr. Tavares was not legitimated. It all comes down to acknowledgement, is that? That's correct, Your Honor. In 209 C, section 2 and section 11 govern a writing, govern, excuse me, acknowledgement, and for that type of acknowledgement, you look to a writing that's executed by both parents and filed within either the clerk or the court of the child's birth or you can, or filed at the register of vitals. Here, the birth certificate at best is what they have, and that's not an executed writing. There's no evidence that Manuel Tavares was involved in that creation. Well, I realize this is not before us, Ms. Everett. Can you tell us Mr. Tavares' status at the moment? He is currently in detention in Clinton County Correctional Facility pending this outcome of this petition. And what happens if we hold that he has not been legitimated? Will he be released and deported or released and kept here as a citizen? If you hold that he has not been legitimated, then he will receive citizenship and stay in the U.S. Now, his father passed away. Has there been any determination of paternity in connection with the inheritance aspect? That's not in the record, Your Honor. Good response. If there are no further questions, thank you. We'll hear from you on rebuttal. Thank you. May it please the Court, Christina Periscindola for the Attorney General. The most important point in this case is that legitimation is a status. One is either born legitimate or acquires it later in life. Here, the legitimating act was the intermarriage of Mr. Tavares' mother,   and father. And that's what distinguishes this case from the prior board decisions. What case says that legitimation under Massachusetts law or Cape Verde law is determined by marriage of the... Well, Your Honor, I don't think there's a particular case that states that. But here, the board looked at the facts of this case and then looked to legitimation. And under the statute, as it defines the word, child. And a child is legitimated... You look to the law of the child or his parents' domicile or residence. So that's what the board did here. So there's nothing... Just to answer your question. Was your point directed towards the fact that status would mean Massachusetts law applies? Is that what you're getting at? No, no, Your Honor, it's not. It's just we don't have to look at Massachusetts. It's, is the petitioner legitimated? And it doesn't matter where. Was the BIA correct in saying that legitimation depends upon paternity having been acknowledged? Was the BIA correct in saying that? Your Honor, in this context, the court was... The board was correct in stating that. I'm sorry if I'm not understanding your question. The board looked at, okay, we have to find out, was this... Was Mr. Tavares legitimated? Okay, and what does that depend upon? Right. So we have to look at, well, there's no federal family law on what is legitimated. So then, you know, there are two logical places we could look to. The law of Cape Verde or the law of Massachusetts, where the petitioner and his parents had been living for the past several years. Then the board looked to the statute, which says that legitimation is determined by the law of the child's or parent's domicile or residence. And this, getting to the issue of whether the court should apply Chevron deference, this is an issue that implicates the agency's expertise. Legitimation is an important issue, not just in this case, but usually you see it when conferring an immigration benefit. Why can the BIA have more expertise in reading a statute than Judge Rondella, Judge Fischer, or myself? Well, Your Honor, the BIA has its own precedential decisions going back to 1961. The case is called Matter of C, where it looked at whether an individual had been legitimated. So there's a long body of case law. And secondly, the Immigration and Nationality Act delegates to the Attorney General the authority to naturalize people. And it also states that- when it is a legal problem as to which law shall govern in a particular instance, it would appear to me that the courts are in a better position than the BIA to determine that, because we are a reviewing authority. Yes, Your Honor. And that's why the standard of review here is de novo. However, there is a statutory provision in the Immigration and Nationality Act defining the word child. And it was reasonable for the board to look at that, given that it's implementing the Immigration and Nationality Act. Well, I want to call your attention to one other thing. Judge Rondella asked you whether there was a case which said that mere intermarriage, which is what your argument was, is sufficient unto itself. That is your position, is it not? Judge Garth, it is not our position, actually. And I hope that didn't come across in our brief. Was that the position you stated to the court, that by the fact of intermarriage, the fact that the father married the mother, that was sufficient itself to determine legitimization? No, Your Honor. And I'm sorry if I misspoke then. It was the- there are two acts. And this is under Massachusetts law. There is an acknowledgment of paternity, which in this case was the listing of the father's name on Mr. Tavar's birth certificate. So there's the acknowledgment plus intermarriage. How was that an- who did that acknowledgment, the listing on the birth certificate? Well, Your Honor, we don't know. There's nothing in the record stating that. However, under Massachusetts law, just the word of the mother stating that someone's the father- Who knows it's the word of the mother? Who knows it's the word of the mother even? It's just on there. There's no signature. Your Honor, that's correct. Actually, we don't know that for certain. However, in these cases, when an individual is born outside of the United States, it is his burden to establish that he is a citizen. And he's never raised any argument like this in his proceedings before the immigration courts or before the board. He even submitted two affidavits from his father. And his father never raised the argument that, well, I was named incorrectly on the birth certificate. I am not Mr. Tavar's father. There has to be something of record that would point to the fact that that does constitute an acknowledgment for him to then have to undermine that and say it wasn't. But it does not appear that if someone types a person's name on a birth certificate as the father, are you saying the law is that the acknowledgment can be an act by someone other than the father? That seems strange to me. That, I don't, if you could cite some authority saying acknowledgment of paternity can be effectuated by someone other than the father. I'd like to know if there's case law to that. Okay, Your Honor. I could submit supplemental briefing to the court on that. Have you come across any case where the father has said absolutely nothing and we have the acknowledgment conduct words of someone else that is taken as acknowledgment of paternity? I see. So if I understand correctly, you're saying that the mere listing of the father's name on the birth certificate is not an acknowledgment of paternity. It was not done by the father. Your Honor, I don't know. But his name is listed. And just the fact that he hasn't... His name could have been listed. I mean, the mother could have wanted retribution against someone and put down the name of, you know, John Smith, who, you know, did her wrong a couple of years ago. And particularly at that time, he was married to someone else. Yes. At the time Tavares was born. Yes, that's correct. He was. But the fact is, we've been through several years of proceedings in this case. And the father has never raised that, never repudiated it. But the issue here, the issue here is, and you acknowledge the decision of Bagot versus Ashcroft. We have to look at whether as of the time of the mother's naturalization in 1990, there was an acknowledgment, correct? Correct. All right. And, you know, so in effect, you know, whatever happened in 2000, you know, obviously his affidavit on, the father's affidavit on his citizenship application doesn't apply. That's correct. I have some question as to whether or not his affidavit in 2000, that he never acknowledged that paternity as of 1990 has much relevance here for us. But under Massachusetts law, there needs to be some acknowledgment. Will you agree with that, at least? Yes. And will you agree as to the Chevron deference, that we do not have to defer to the BIA's findings on that question, that it's really for us to decide whether there's evidence in the record of acknowledgment? I have to think about this, but the Chevron, the court should accord Chevron deference to the choice of which jurisdiction's law. So beyond that. And then the choice of the Massachusetts statutes, right? There are at least three statutes under which an individual can be legitimated. But you're asking whether the board's interpretation of Massachusetts statutes. Of the facts in this case, as to whether or not there was an acknowledgment. Do we have to defer to the BIA's interpretation there, or do we have to make that determination ourselves? Your Honor, I will concede that the court does not owe Chevron deference on that point. So we have to determine then, based on this record, whether there was any acknowledgment. Yes, Your Honor. In 1990. Yes. What would you point to? Well, we just as a basic matter of family law, when a father's name is listed on the birth certificate, we can presume that he has acknowledged paternity. Although that's not what the BIA said. The BIA said, in a very sweeping, conclusory statement, there's no dispute that the respondent's father had, at all relevant times, acknowledged his paternity of the respondent. Now, what factual basis is there in the record for that? I mean, we may have a substantial evidence standard here, but we need to see whether a reasonable fact finder could dispute that. What are they referring to here? Educate us. What was in the record that showed that, at all relevant times, he acknowledged his paternity? That, Your Honor, is a great question. I think it would have been more precise for the board to state that, at all times, Mr. Tavar's father did not acknowledge. He didn't bring any legal action to repudiate his paternity. He didn't state that he didn't- Is there a provision in Massachusetts law for legal actions to repudiate paternity? Your Honor, I don't know. All right. But your position is, whether or not they said it precisely, it's the birth certificate that really is the key. It is the birth certificate, plus the lack of any statement. And in addition, under the substantial evidence standard, it's whether a reasonable fact finder would be compelled to find the contrary of the board. Let's suppose we disagreed with you, that there was substantial evidence in this record to conclude that the father acknowledged Tavaris as of 1990. Let's just suppose for a second we disagreed with you on that. Do you get another chance, or do we grant the petition for review? Judge Fischer, I think you're asking whether the court should remand the case. Normally, that is what we argue, because immigration cases usually involve fact finding. Here, it's an issue of law, and it's an issue of law that the board has decided on. I think they've had two bites at the apple on this one. And so we would argue here that the case should not be remanded, and that we would have to accept the court's decision. Okay. To your credit. To your credit. Thank you. Are there any further questions? Judge Garth? No, I have no further questions. So just to summarize, and this probably wasn't clear in our brief, but the court standard of review is de novo, with Chevron deference as noted. And in addition, there are just several indisputable facts in this case, that Mr. Tavaris' name appeared on the birth certificate, and his marriage to Mr. Tavaris' mother, which were not at issue, and those were the legitimating acts. Thank you. Thank you. Our rebuttal, Ms. Everett. Let me ask, aren't we under a substantial evidence standard, or what is your take on standard of review beyond the issue of deference? We believe that there is a, excuse me, there is a substantial standard, and it's deferential, but it's still conditioned on the idea that there is actually support in the record for the facts that are stated. And we don't believe that's here, as I stated earlier. There's just two points. Ms. Everett, do you agree that the BIA should be the determining factor in deciding which of two sovereignties law shall govern, or should court be? We believe that a choice of law is actually more properly before this court than the BIA, but again, we don't believe you need to reach that issue here. Thanks. On, the government argued that Mr. Tavaris had not argued below that the birth certificate was not an act of acknowledgement. I'd just like to point the court to a few pages in the record. Mr. Tavaris actually raised this argument before the BIA in 2008. That can be found at joint appendix page 66. He raised that before the immigration judge in 2008. That can be found in page 356 of the joint appendix. He raised it before the immigration judge in 2000. That could be found on page 279. In addition, before court proceedings, before the immigration judge in 2000, he also said that the birth certificate was not an act of acknowledgement in Cape Verde either, and that can be found on page 622. Thank you. The respondent focused on the fact that legitimacy is a status. Legitimacy can be distinguished from legitimation, which are the words in the statute. Legitimacy may be a status, but legitimation is an act. And originally, the status was immutable, as we know. You were born out of wedlock and you had the status. But since then, several jurisdictions, including Massachusetts, have enacted statutes that allow children born out of wedlock to receive the same rights. And for them to receive the same rights as a child born in wedlock, the parent needs to take affirmative steps to legitimate their child. There's nothing further? All right. Thank you very much. And thank you again for coming to Burlington for undertaking the representation. Thank you, counsel. The case is well argued. Take it under advisement.